## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

ABDUL MUSTAFA CRAWFORD
8521 Greenbelt Road
Greenbelt, Maryland 20770

    *Plaintiff,*

    v.

AESECURITY INC.
11045 Briarlynn Court
Fairfax Station, Virginia 22039

Serve: ASHRAF ELHAWARY
      11045 Briarlynn Court,
      Fairfax Station, Virginia, 22039

ASHRAF ELHAWARY
11045 Briarlynn Court,
Fairfax Station, Virginia, 22039

JOHN H. GROTH
7331 Wayfarer Drive
Fairfax Station, Virginia 22039

THE EMBASSY OF QATAR
1530 P Street, Northwest
Washington, District of Columbia, 20005

    *Defendants*.

Case No.: 1:26-cv-01471

## COMPLAINT

Plaintiff, Abdule Mustafa Crawford ("Plaintiff"), by his undersigned counsel, Melehy & Associates LLC, hereby brings suit against AESecurity Inc. ("AESecurity"), John H. Groth ("Groth") and Ashraf Elhawary ("Elhawary"), along with The Embassy of the State of Quatar ("the Quatar Embassy"), for violations of the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001 *et. seq.* ("DCMWRA") brought through the District of Columbia Payment and Collection of Wages Law, D.C. Code §§ 32-1301, *et seq.* ("DCPCWL"). Plaintiff alleges as follows:

**THE PARTIES**

1.      Plaintiff is an adult resident of the State of Maryland. His employment with Defendants began on May 11, 2022 and is ongoing. Plaintiff has been employed by Defendants as a Special Police Officer at a building which was owned and operated by the Quatar Embassy: 1219 28th Street, Northwest, Washington, D.C. 20007. In this lawsuit, Plaintiff is seeking to recover damages based on Defendants failure to pay him an overtime premium for his overtime hours, which he worked from May 11, 2022 through sometime in December 2025. This shall be referred to as the "relevant period".

2.      AESecurity is a limited liability company organized under the laws of the Commonwealth of Virginia.  AESecurity was licensed to do business in the District of Columbia but in 2023, its status as a foreign corporation licensed to do business in the District of Columbia was revoked. Nonetheless, it continued to do business in the District of Columbia. At all relevant times, AESecurity entered into a contract or contracts with the Quatar Embassy to provide the embassy with Special Police Officers. AESecurity employed Plaintiff within the meaning of the DCMWRA and the DCPCWL, because it treated him as an employee, it maintained his employment records, it paid his wages, it set his pay rate, it supervised him, it hired him, it had the authority to fire him and it made the decision to pay him in a manner made unlawful by the DCMWRA and the DCPCWL.

3.      Elhawary is an owner, President and Director of AESecurity. Elhawary is an employer of Plaintiff within the meaning of the DCMWRA and the DCWPCL because: (1) he is an owner, President and Director of AESecurity who is significantly involved in AESecurity's business operations; (2) he along with Groth is responsible for creating and enforcing AESecurity's policies and procedures governing employee pay and benefits; (3) he controls the corporate funds which were used to pay Plaintiff and other employees and he could and did allocate funds as profits for his own benefit; (4) he, along with Groth, set and approved the hourly rate and manner of pay for Plaintiff and other employees who are non-exempt and acted with knowledge of or approved the unlawful pay practices (failing to pay an overtime premium for overtime hours); (5) he had authority

to hire, fire and discipline Plaintiff; (6) he along with Groth made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make AESecurity more profitable, and (7) he along with Groth maintained Plaintiff's employment records at AESecurity's corporate headquarters.

4.      Groth is an owner and a manager of AESecurity. Groth is an employer of Plaintiff within the meaning of the DCMWRA and the DCWPCL because: (1) he is an owner and manager of AESecurity who is significantly involved in AESecurity's business operations; (2) he, along with Alhawary was responsible for creating and enforcing AESecurity's policies and procedures governing employee pay and benefits; (3) he, along with Alhawary, controlled the corporate funds which were used to pay Plaintiff and other employees and he could and did allocate funds as profits for his own benefit; (4) he, along with Alhaware, set and approved the hourly rate and manner of pay for Plaintiff and other employees who are non-exempt and acted with knowledge of or approved the unlawful pay practices; (5) he interviewed Plaintiff, hired him and with assistance from lower level managers set his rate and manner of pay; (6) he, along with Alhawary, had authority to hire, fire and discipline Plaintiff and he actually hired Plaintiff; (7) when Plaintiff received paycheckcs, Groth signed them and when Plaintiff received direct deposit, Groth authorized the amount of the direct deposits; (8) through lower level managers, Groth supervised Plaintiff and established his work schedule; (7) Groth, along with Alhawary, made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make AESecurity more profitable, and (8) Groth, along with Alhaware maintained Plaintiff's employment records.

5.      Plaintiff performed all of his work for Defendants on the Quatar Embassy's premises. For reasons explained later in the Complaint, the Quatar Embassy is a joint employer of Plaintiff along with AESecurity, Elhawary and Groth and therefore jointly and severally liable for violations of the DCMWRA and the DCWPCL. There are also two other bases for the Quatar Embassy's joint and several liability. First, during the relevant period, the Quatar Embassy entered into one or more subcontracts with AESecurity to provide armed security personnel at the embassy (1219 28th Street, Northwest, Washington, D.C. 20007). As such, the Quatar Embassy

3

was a general contractor, and/or an intermediate-level subcontractor within the meaning of D.C. Code § 32-1012 (c) and jointly and severally liable for the violations. Second, AESecurity is a "temporary staffing firm" that has assigned employees (Plaintiff and others) to perform armed security services for and on behalf of the Quatar Embassy. The Quatar Embassy is a "client" of AESecurity within the meaning of D.C. Code § 32-1012 (f)(1), and therefore jointly and severally liable for the violations of the DCMWRA and the DCWPCL committed by Defendants.

## SUBJECT MATTER JURISDICTION

6.       The jurisdiction of this Court is based upon 28 U.S.C. § 1330 (a), in that one of the Defendants, the Quatar Embassy, is a foreign state. Section 1330 (a) provides that: "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title [28 USCS § 1603(a)] as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title [28 USCS §§ 1605–1607] or under any applicable international agreement."

7.       This court has jurisdiction over the Quatar Embassy because it falls within one of the exceptions to jurisdictional immunity that foreign states possess – the commercial exception. *See* 28 U.S.C. § 1605 (a)(2). Since Plaintiff was engaged by Defendants, the statutory minimum wage violations (and the Quatar Embassy's liability for them) fall within the commercial exception to the Quatar Embassy's sovereign immunity. *See El-Hadad v. United Arab Emirates*, 496 F. 3d 658, 663, 665-66 (D.C. Cir. 2007).

## PERSONAL JURISDICTION OVER DEFENDANATS

8.      This Court has general personal jurisdiction over AESecurity, Groth and Elhawary under the District of Columbia Long Arm Statute, D.C. Code §13-423(a)(1) and (a)(2) because they transacted business and entered into contracts to perform service in the District of Columbia. Moreover, this complaint meets the criteria set forth in Code §13-423(b) because Plaintiff's claims arise out of and relate to AESecurity, Groth's and Elhaway's contacts with the District of Columbia, since the violations occurred there.

9.      This Court has specific personal jurisdiction over the Quatar Embassy under D.C. Code §13-423 (a)(1) and (a)(2) because it is located in the District of Columbia and Plaintiff's claims arose out of or relate to its contacts with and presence in the District of Columbia. Plaintiff has also satisfied the conditions for personal jurisdiction under 28 U.S.C. § 1330 (b) which are that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title [28 USCS § 1608]." Plaintiff will serve the Quatar Embassy in the manner required by law.

## PLAINTIFF'S EMPLOYMENT WITH THE QUATAR EMBASSY, AESECURITY AND ELHAWARY AND THE WAGE VIOLATIONS

10.      During his entire employment with Defendants, Plaintiff has and continues to work at the Quatar Embassy, which is located in the District of Columbia.

11.      During his employment, Plaintiff was paid on an hourly basis and his hourly rate ranged from $17 per hour to $20 per hour.

12.      For a brief period of time at the beginning of his employment with Defendants, Plaintiff worked six shifts per week, four 8-hour shifts and two 12-hour shifts, with no bona fide lunch break. He worked from Monday through Friday beginning work 10:00 p.m. and ending at 6:00 a.m. the next day, which was eight hours each day. Plaintiff worked longer shifts on the weekend. On Fridays, Plaintiff would begin work at 10:00 p.m. and end on Saturday at 10:00 a.m. and he did the same on Saturday, ending work at 10:00 p.m. Sunday morning.

This was a total of 56 hours per week.

13.    Subsequently, Defendants changed Plaintiff's schedule again. Under the new schedule, Plaintiff worked five shifts per week, four 8-hour shifts and one 12-hour shift per week with no bona fide lunch break. Plaintiff worked from Monday through Saturday morning. He would begin work at 11:00 p.m. and end work at 7:00 a.m. the following day. He would work longer from Friday evening to Saturday morning, beginning work at 10:00 p.m. on Friday and ending at 10:00 a.m. on Saturday morning. Under this schedule, Plaintiff worked 44 hours per week.

14.    In December 2025, after receiving written notice that they were violating the DCMWRA and the DCWPCL, Defendants again changed Plaintiff's schedule so that was working 40 hours per week or less and no overtime hours.

15.    There may have been other schedule changes, but Plaintiff is presently unaware of when those occurred and he will rely on Defendants' time and payroll records to ascertain if and when there were other schedule changes. Presently, Plaintiff has no access to those records as they are in possession of Defendants or some third party.

16.    During the time that Plaintiff worked overtime hours, Defendants failed to pay Plaintiff an overtime premium for his overtime hours.

17.    Plaintiff is covered by the DCMWRA because, during the relevant period, he spent all of his working time in the District of Columbia.

18.    Plaintiff is also covered by the DCWPCL because at all relevant times, AESecurity employed multiple people (including Plaintiff) in the District of Columbia. *See* D.C. Code 32-1301 (1B); *Steinke* v. *P5 Sols., Inc.*, 282 A.3d 1076, 1082-84 (D.C. 2022).

19.    Thus, Plaintiff is entitled to his unpaid overtime wages and liquidated damages equal to three times the amount of the underpaid wages and attorney's fees at the Legal Services Index Rate and/or the rates set forth

in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

<h3 style="text-align:center">LIABILITY OF THE QUATAR EMBASSY</h3>

20.     The Quatar Embassy along with the other Defendants jointly employed Plaintiff within the meaning of the DCMWRA and the DCWPCL because: (1) formally or as a matter of practice, the Quatar Embassy and the other Defendants jointly determined, shared, or allocated the power to direct, control, or supervise Plaintiff, by direct or indirect means; (2) the Quatar Embassy and the other Defendants formally or as a matter of practice, determined, shared, or allocated the power to—directly or indirectly—hire or fire Plaintiff or modify the terms or conditions of his employment; (3) the work Plaintiff performed was controlled by the Quatar Embassy and the other Defendants ; and (4) formally or as a matter of practice, the Quatar Embassy and the other Defendants determined, shared, or allocated responsibility over functions ordinarily carried out by an employer, such as setting the Plaintiff's schedule and hours, supervising him, and providing his with equipment, tools, supplies and materials necessary for him to complete his work. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017).

21.     During the relevant period, the Quatar Embassy entered into one or more subcontracts with AESecurity to provide security services. As such, the Quatar Embassy was a general contractor, and/or an intermediate-level subcontractor within the meaning of D.C. Code § 32-1012 (c). It is therefore jointly and severally liable for the violations of the DCMWRA and the DCWPCL committed by the other Defendants (these provisions became effective on February 26, 2015).

22.     Finally, and in the alternative, AESecurity is a "temporary staffing firm" that has assigned employees (Plaintiff and others) to perform armed security services for and on behalf of the Quatar Embassy. The term "temporary staffing firm" means "a business that recruits and hires its own employees and assigns those employees to perform work or services for another organization, to support or supplement the other organization's

workforce, or to provide assistance in special work situations such as employee absences, skill shortages, seasonal workloads, or to perform special assignments or projects." D.C. Code § 32-1008.01. The Quatar Embassy is a "client" of AESecurity within the meaning of D.C. Code § 32-1012 (f)(1), and therefore jointly and severally liable for the violations of the DCMWRA and the DCWPCL committed by the other Defendants.

23.    On or about December 4, 2025, Plaintiff's counsel sent written notice (via federal express) of his claim to AESecurity and the Quatar Embassy pursuant to D.C. Code §32-1012(f)(2) and §32-1303(6). The notice described the nature of the claim, the statutory basis for it along with the fact that Plaintiff intended to hold AESecurity and the Quatar Embassy liable for the violations of the DCWPCL and the DCMWRA. Well over 30 days have passed since the notice was sent.

### TOLLING OF THE STATUTE OF LIMITATIONS

24.    Plaintiff has asserted timely wage claims Defendants under the DCWPCL and the DCMWRA from May 11, 2022 to sometime in December 2025, when Defendants changed his schedule to eliminate any overtime hours. . The applicable statute of limitations under the DCMWRA and the DCWPCL (and which went into effect on February 26, 2015), provides that an action, "must be commenced within 3 years after the cause of action accrued, *or the last occurrence if the violation is continuous*. . . ." D.C. Code § 32-1308 (c)(1) (Emphasis supplied). On a continuing and ongoing basis from the beginning of Plaintiff's employment with Defendants to sometime in December 2025, they failed to pay the Plaintiff an overtime premium for his overtime hours. Thus, the three-year statute of limitations began to run on the last day of the violation which was December 2025 and this action, which seeks unpaid an unpaid overtime premium back to May 11, 2022 is timely.

25.    And for another reason, Plaintiff has also asserted timely claims under the DCMWRA and the DCWPCL against all Defendants for violations that occurred from May 11, 2022 to sometime in December 2025. The statute of limitations for those claims was tolled from the inception of his employment (May 11, 2022) and for each day thereafter until December 2025, when, on a continuing basis, the Defendants failed to comply with

the notice provisions of D.C. Code § 32-1008 (c) and (d) (which became effective on February 26, 2015). Section 32-1008 (c) and (d) required them to provide written notice to Plaintiff of, *inter alia*, his overtime rate of pay and any exemption that applied to him. Defendants were required to comply with this written notice provision within 90 days after the statutory amendments took place – no later than May 27, 2015, and within 30 days of any change in that rate. *See* D.C. Code § 32-1008 (d)(1)(A). At no time during Plaintiff's employment did any Defendant comply with the notice provisions by providing Plaintiff with written notice indicating his overtime rate of pay or any exemption that applied to him. Since Defendants failed to provide the required written notice to Plaintiff, the statute of limitations in § 32-1308 (c) was tolled beginning on the date his employment began and continuing thereafter.

26.     This means that Plaintiff has timely unpaid wage claims for following time frame: May 11, 2022 to December 2025. *See* D.C. Code § 32-1008 (d)(3) ("The period prescribed in § 32-1308 (c), shall not begin until the employee is provided all itemized statements and written notice required by this section").

**COUNT I**
**(VIOLATIONS OF THE DCMWRA BROUGHT THROUGH THE DCWPCL)**

10.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

11.     At all times relevant to the Complaint, Plaintiff was jointly employed by Defendants within the meaning of D.C. Code § 32-1002 (2).

12.     At all times relevant to the Complaint, Defendants were joint "employer[s]" of Plaintiff within the meaning of D.C. Code § 32-1002(3).

13.     At all times relevant to the Complaint, Plaintiff was jointly employed by Defendants within the meaning of D.C. Code § 32-1301(1B).

14.     In addition to being directly liable for the violations of the DCMWRA (brought through the DCWPCL) as a joint employer of Plaintiff, the Quatar Embassy is also jointly and severally liable because under § 32-1303(5), it is a "client" of a temporary staffing firm (AESecurity), and therefore jointly and severally liable

for the wage violations under D.C. Code § 32-1012(f)(1). In addition, Plaintiff complied with the notice provisions of D.C. Code § 32-1012(f)(2) by providing written notice to AESecurity and the Quatar Embassy more than 30 days prior to the filing of this lawsuit.

27.     In addition, the Quatar Embassy entered into one or more contracts with AESecurity to provide armed security services. As such, the Quatar Embassy was a general contractor, and/or an intermediate-level subcontractor within the meaning of D.C. Code § 32-1012 (c) and jointly and severally liable for the violations of the DCMWRA and the DCWPCL committed by the other Defendants (these provisions became effective on February 26, 2015).

15.     Defendants violated the DCMWRA and the DCWPCL, by failing to pay Plaintiff an overtime premium for his overtime hours.

16.     As a result of the violations of the DCMWRA and the DCWPCL, Defendants are jointly and severally liable for Plaintiff's unpaid overtime premium, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

**RELIEF REQUESTED**

Plaintiff requests the following relief:

A.      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on violations of the DCMWRA and the DCPCWL, in the amount of Plaintiff's unpaid wages, plus an amount equal to three times the amount of unpaid wages as liquidated damages; and

B.      enter judgment against Defendants, jointly and severally, and in favor of Plaintiff for his litigation costs and attorney's fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

Respectfully submitted,

/s/_*Omar Vincent Melehy*_____
Omar Vincent Melehy, Esq.
DC Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone: (301) 587-6364
Fax: (301) 587-6308

*/s/Andrew Balashov*
Andrew Balashov
Bar No.: 1630738
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
abalashov@melehylaw.com
Phone: (301) 587-6364
Fax: (301) 587-6308

*Attorneys for Plaintiff*

11